United States Court of Appeals,

Eleventh Circuit.

No. 95-6743.

UNITED STATES of America, Plaintiff-Appellee,

v.

I.D.P., a male juvenile, W.L.G., a male juvenile, Defendants-Appellants.

Dec. 31, 1996.

Appeals from the United States District Court for the Southern District of Alabama. (No. 95-164-RV-S), Richard W. Vollmer, Jr. Judge.

Before TJOFLAT and BIRCH, Circuit Judges, and SMITH[*], Senior Circuit Judge.

BIRCH, Circuit Judge:

This appeal presents two issues of first impression in this circuit pertaining to the Juvenile Justice and Delinquency Prevention Act of 1974 ("the Act"), 18 U.S.C. §§ 5031-5042. We must resolve: (1) whether the government's certification that an offense committed by a juvenile presents a substantial federal interest giving rise to federal jurisdiction is subject to judicial review, and (2) the government's burden of proof before the district court as to whether the interests of justice militate in favor of a juvenile's transfer to adult status. In addition, we must decide whether the particular facts of this case support the district court's order that the appellants be tried as adults. For the reasons that follow, we affirm.

I. BACKGROUND

[*]Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

On August 22, 1995, the government filed a three-count information charging I.D.P. and W.L.G. with armed robbery of a motor vehicle ("carjacking"), conspiracy, and use of a firearm during the commission of a crime of violence, in violation of 18 U.S.C. §§ 2119, 2, 5032, 371, and 924(c).  It is undisputed that both I.D.P. and W.L.G. were juveniles at the time they allegedly committed these offenses.[1]  The following recitation of facts underlying the charges against I.D.P. and W.L.G. are assumed to be true solely for the limited purpose of this appeal:  On April 20, 1995, I.D.P. and W.L.G. approached a parked truck in which two teenagers sat.  W.L.G. pulled the individual seated in the passenger side out of the truck, while I.D.P. pointed a gun at the driver and ordered him to get out of the truck.  Shortly thereafter, I.D.P. and W.L.G. drove the stolen vehicle to a grocery store accompanied by another juvenile.  I.D.P. and the other juvenile went into the store, demanded money from a cashier, and shot the cashier in the abdomen when she did not immediately accede to their request.  The cashier was pregnant at the time I.D.P. shot her.  Another cashier gave I.D.P. and his companion the money they had demanded.

On the same date on which the information against I.D.P. and W.L.G. was filed, the government moved to proceed against each

---

[1]Under the Act, a "juvenile" is defined as "a person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under [the Act] for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday."  18 U.S.C. § 5031.  "Juvenile delinquency," moreover, is defined as "the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult or a violation by such a person of section 922(x)."  *Id.*

juvenile as an adult.  Consistent with the requirements set forth in 18 U.S.C. § 5032, the United States Attorney filed with the district court (1) a certification stating that the offenses with which I.D.P. and W.L.G. were charged were felonies and crimes of violence and that there was a substantial federal interest to warrant the exercise of federal jurisdiction, and (2) certified copies of each defendant's state juvenile record.  I.D.P. and W.L.G. each moved to dismiss the information for lack of federal jurisdiction, claiming that certification was improper due to the lack of a substantial federal interest.  Following a court-ordered psychological examination of each defendant, the court conducted a closed hearing on each party's pending motion.

The court denied the motions to dismiss after finding not only that the government's certification was not subject to judicial review, but that even if the court were to review the certification, the crime of carjacking—particularly under the violent circumstances existing in this case—presented a substantial federal interest.

The court next analyzed, again pursuant to the terms set forth by federal statute, the age, social background, and psychological maturity level of each juvenile, the nature of the offenses with which they were charged, their respective juvenile delinquency records, their respective responses to past treatment, and the availability of programs designed to treat their particular behavioral problems.  *See* 18 U.S.C. § 5032. Based on its findings, the court determined that the government had proven by a preponderance of the evidence that the interests of justice weighed

more heavily in favor of transfer to adult status.  Accordingly, the court granted the government's motion to transfer with respect to both I.D.P. and W.L.G.

I.D.P. and W.L.G. appeal the district court's determination that they be tried as adults.  Specifically, they contend that (1) there is no basis for federal jurisdiction because the government's certification erroneously characterized the carjacking offense at issue in this case as giving rise to a "substantial federal interest," (2) assuming certification was proper, the government should have been required to show by clear and convincing evidence—rather than by a preponderance of the evidence—that transfer to adult status was proper, and (3) the district court abused its discretion in concluding, based on the statutory factors and the particularized facts of this case, that these individuals should be tried as adults.

The government argues that certification is an administrative decision that rests solely within the discretion of the Attorney General and, therefore, is isolated from judicial review.  The government further suggests that even if we were to review the certification, the carjacking offense that occurred in this instance implicates a substantial federal interest sufficient to warrant the exercise of federal jurisdiction.  Finally, the government submits that the district court properly evaluated and balanced the applicable statutory factors in reaching its determination that transfer to adult status was justified with respect to both defendants.

## II. DISCUSSION

As a preliminary matter, a brief overview of the applicable provisions of the Act is necessary to our examination of the questions presented in this appeal. To commence a juvenile prosecution in federal district court, the Act mandates that the government file with the court certified copies of the charged individual's state juvenile records. In addition, the Attorney General or her delegate[2] must certify, after investigation, that

> (1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to [the] alleged act of juvenile delinquency, (2) the State does not have available programs and services adequate for the needs of juveniles, or (3) the offense charged is a crime of violence that is a felony ... and that there is a substantial Federal interest in the case of the offense to warrant the exercise of Federal jurisdiction.

18 U.S.C. § 5032. Here, the government chose to proceed against both W.L.G. and I.D.P. under the third category provided by the statute and certified to the court that "the offenses charged against W.L.G., and I.D.P., male juveniles, are felony crimes of violence and there is a substantial federal interest in this case or the offenses to warrant the exercise of federal jurisdiction." R2-7.

Although the government's certification to the court is necessary to invoke federal jurisdiction, the decision regarding whether to transfer a juvenile to adult status ultimately rests with the court.[3] Once the government moves for such a transfer,

_____

[2]The authority to certify on behalf of the Attorney General has been delegated to the appropriate United States Attorney. 28 C.F.R. 0.57 (1995).

[3]There is, however, a statutorily prescribed exception to this general rule involving mandatory transfer to adult status once certification has been filed. Such automatic transfer,

transfer is appropriate only if the court finds, after a hearing, that a transfer would be in the interest of justice.  The statute details the considerations that the court must take into account in reaching its decision:

> Evidence of the following factors shall be considered, and findings with regard to each factor shall be made in the record, in assessing whether a transfer would be in the interest of justice:  the age and social background of the juvenile;  the nature of the alleged offense;  the extent and nature of the juvenile's prior delinquency record;  the juvenile's present intellectual development and psychological maturity;  the nature of past treatment efforts and the juvenile's response to such efforts;  the availability of programs designed to treat the juvenile's behavioral problems.

18 U.S.C. § 5032.  While the court is statutorily required to make findings with respect to all enumerated factors, it remains within the court's discretion to determine what weight to give to each one.  *United States v. Doe,* 871 F.2d 1248, 1254-55 (5th Cir.), *cert. denied,* 493 U.S. 917, 110 S.Ct. 276, 107 L.Ed.2d 257 (1989).

Again, it is important to emphasize that the government's certification to the court regarding the statutory classifications necessary to invoke federal jurisdiction is distinct from—and in no way dispositive of—the question of whether a juvenile should be tried as an adult.  *See United States v. Juvenile Male # 1,* 86 F.3d 1314, 1317 n. 4 (4th Cir.1996) quoting S.Rep. No. 225, 98th Cong., 2d Sess. 389 n. 10) (1983) ("Only if the criteria for retaining federal jurisdiction over a juvenile in the first instance ... are

---

which precludes any discretionary determinations by the district court, occurs when a juvenile is alleged to have committed an offense that (1) would be deemed a felony if committed by an adult, (2) involved the use or attempted use of physical force, and (3) the juvenile was previously convicted of one of the listed felonies.  *See* 18 U.S.C. § 5032.  The government does not contend that automatic transfer applies in this instance.

met, may there then be consideration of whether Federal prosecution, as opposed to a Federal juvenile delinquency proceeding, is appropriate.") Before reaching the issue of whether the district court properly concluded that the interest of justice weighed in favor of trying W.L.G. and I.D.P. as adults, therefore, we first must decide whether the government's certification that endows the federal court with jurisdiction over this case is subject to judicial review.

## A. Certification

In *United States v. C.G.,* 736 F.2d 1474 (11th Cir.1984), we examined whether the Attorney General's certification necessary to invoke federal jurisdiction under either of the first two statutorily prescribed categories—in other words, that the state either does not have or refuses to assume jurisdiction over a juvenile or, in the alternative, does not have programs available to meet the needs of juveniles—was amenable to our review. We resolved that certification under section 5032 generally was not reviewable. Several exceptions to this rule were explicitly noted: We acknowledged, for instance, that a court could review a certification for formal compliance with the statute.[4] We further established that review was proper where the juvenile had alleged that the government had certified the action in bad faith. *See id.* at 1478.

In the absence of a purely formal error on the face of the

---

[4]Examples of non-compliance over which the court could exercise review might be "where the verifying party is not a proper delegate of the Attorney General ... [or] where the certification is not filed in a timely fashion." *Id.* at 1477 (citations omitted).

certification or proof of bad faith on the part of the government, we concluded that certifications made in accord with section 5032 customarily "must be accepted as final." *Id.* In reaching this determination, we adopted the Second Circuit's approach to this issue as articulated in *United States v. Vancier,* 515 F.2d 1378 (2d Cir.), *cert. denied,* 423 U.S. 857, 96 S.Ct. 107, 46 L.Ed.2d 82 (1975). In *Vancier,* the court's legal analysis was grounded in part on the observation that section 5032 not only failed to set forth standards by which the court could determine the appropriateness of certification but also served to qualify prosecutorial discretion rather than confer upon the courts the power to decide in which forum to bring juvenile delinquency cases. *See Vancier,* 515 F.2d at 1380-81. Moreover, we found persuasive the *Vancier* court's reference to other instances in which courts have found decisions made by the executive branch in connection with law enforcement matters to be non-reviewable. *See United States v. C.G.,* 736 F.2d at 1478 (citing *Vancier,* 515 F.2d at 1381 (collecting cases)).

Although our decision in *United States v. C.G.* necessarily guides our disposition of this case, it does not resolve entirely the matter before us. Significantly, the statutory language at issue here—that is, a third possible basis for federal jurisdiction provided by the Attorney General's certification that the offense charged involves a "substantial federal interest"—was added to section 5032 in 1984 subsequent to our decision in *United States v. C.G.* We are convinced, however, that the reasoning underlying our decision in *United States v. C.G.* obtains equally with respect to

the amended language presented in this instance. The statute, as amended, specifies that the *Attorney General* shall certify to the court that "the offense charged is a crime of violence that is a felony ... and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction." 18 U.S.C. § 5032. The statute goes on to provide that transfer is appropriate if the *court* finds, after a hearing, that such a transfer would be in the "interest of justice." *Id.* More importantly, the statute sets forth explicit and detailed factors that the court must consider in evaluating whether a transfer would be in the interest of justice; conversely, the statute is virtually silent regarding any standard by which the court may or must determine the existence of a substantial federal interest. In the absence of any indication to the contrary, we presume that this particular textual configuration by Congress was intentional. *See Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir.1972).

By the same token, it is apparent that the type of judgment that must be exercised in deciding whether to prosecute a case in federal court is supervisory in nature, particularly where the interest at stake entails law enforcement concerns. *See United States v. C.G.,* 736 F.2d at 1478. In the context of certification

under this statute, the government's authority to ascertain the presence of a substantial federal interest is no different from its authority to decide whether to prosecute a case in a federal forum. This type of decision falls squarely within the parameters of prosecutorial discretion that previously we have held does not lend itself to judicial intervention. *See Jones v. White,* 992 F.2d 1548, 1574 (11th Cir.) (citing *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985)) ("[O]ur criminal justice system accords prosecutors broad discretion as to whom they prosecute, and ... this discretion is ill-suited to judicial review."), *cert. denied,* 510 U.S. 967, 114 S.Ct. 448, 126 L.Ed.2d 381 (1993). We find persuasive an illustration of the policy nature of the "substantial federal interest" determination offered by the district court in *United States v. W.P., Jr.,* 898 F.Supp. 845 (M.D.Ala.1995):

> [W]hile one bank robbery might involve only a small amount of money, it could still meet § 5032's "substantial Federal interest" requirement if it were part of a wave of bank robberies, or if the crime of bank robbery reached a point where it could be reasonably viewed as a national problem comparable to "large scale drug trafficking, or significant or willful destruction of property belonging to the United States." An assessment of whether a single bank robbery in this broader context is substantial enough to warrant the exercise of federal jurisdiction would be an administrative, not a judicial, undertaking, drawing on such subjective assessment as the overall presence of crime, general deterrence, and enforcement priorities.

*Id.* at 849 (citation omitted). *See also United States v. Juvenile Male,* 915 F.Supp. 789, 793 (W.D.Va.1995) ("[T]he decision as to whether a federal interest is substantial enough to warrant federal jurisdiction is more administrative than judicial in nature. It calls for an assessment as to the overall presence of crime,

general deterrence effects, and enforcement priorities.  As a policy matter, the U.S. Attorney's Office is in a better position to evaluate these variables than is the court.").[5]

The legislative history of the amendment to section 5032 is also instructive in aiding our resolution of this issue.  The Senate Committee on the Judiciary Report relating to the addition of the "substantial Federal interest" language states that

> "[t]his change adopts in part the recommendation of the Attorney General's Task Force on Violent Crime that the Federal Government assume original jurisdiction over Federal Crimes by juveniles, and is substantially the same as a provision in the Criminal Code Reform legislation approved by the Committee in the last Congress."  S.Rep. No. 225, 98th Cong., 2nd Sess. 389 (1983) (footnote omitted).

Regarding the referenced legislation on which the current amendment was based, the Committee report stated:

> The Committee has limited the provision to the more serious Federal felonies in the belief that the Federal government should still defer to State authorities for less serious offenses by juveniles.  The Committee intends that the Federal prosecutor will consider the factors set forth in section 205 ... in deciding whether there is a "sufficient Federal interest in the case."  It is believed necessary to afford the Attorney General this authority when a serious crime occurs in which there is a special Federal interest.

---

[5]*But see United States v. Juvenile Male # 1,* 86 F.3d 1314, 1320-21 (4th Cir.1996) ("We find nothing in the statutory language or legislative history that would overcome the presumption of judicial review....  In short, we can and must first satisfy ourselves that our jurisdiction has been properly invoked.  We do so by reviewing the stated reasons underlying the government's decision to proceed in federal court.");  *United States v. Juvenile Male,* 923 F.2d 614, 618 (8th Cir.1991) ("[W]e reaffirm that a certification in compliance with section 5032 is necessary to invoke federal jurisdiction under that section....  We now review whether this certification was in compliance with section 5032.").  While we recognize that the Fourth and Eighth Circuits have interpreted section 5032 to require judicial review of certifications, we believe that our decision in this case comports with both the express language of the statute and our own circuit precedent.

S.Rep. No. 307, 97th Cong., 1st Sess. 1179 (1981).  Not only does

the report explicitly acknowledge that the legislation was designed

to afford the Attorney General the authority to *decide* whether a

federal interest exists but, perhaps more importantly, refers the

federal prosecutor to a different section of the bill setting forth

proposed criteria that a *prosecutor* should consider in deciding

whether to seek a federal prosecution.  Again, as noted with

respect to the manner in which the statute ultimately was drafted,

Congress chose to leave intact an exhaustive description of

considerations to which the *court* must look before reaching its

decision regarding the "interest of justice," yet provided in

another statutory section factors to which the *prosecutor* must look

before deciding whether a "substantial federal interest" sufficient

to warrant federal jurisdiction exists in a given case.  This

legislative background, coupled with the reasons previously noted,

convinces us that, absent allegations of bad faith or facial

non-compliance with the statute, judicial review of the Attorney

General's decision that a substantial federal interest exists under

section 5032 would not be appropriate.[6]

---

[6]The Supreme Court's recent decision in *Gutierrez de Martinez v. Lamagno,* --- U.S. ----, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995), does not alter our disposition of this question. *Gutierrez de Martinez* concerned the Attorney General's certification under the Westfall Act that a defendant-employee was acting within the scope of his employment and that the United States, consequently, could be substituted as a defendant in a civil action.  In concluding that such certifications were reviewable by a federal court, the Court expressly noted that its analysis was driven largely by two compelling factors:

> First, the Attorney General herself urges review, mindful that in cases of the kind petitioners present, the incentive of her delegate to certify is marked. Second, when a government official's determination of a

B. Quantum of Proof

I.D.P. and W.L.G. posit that the district court should have required the government to prove the factors underlying its motion to transfer to adult status by clear and convincing evidence rather than a preponderance of the evidence. We conclude, however, that the district court did not err in applying the preponderance standard to its findings regarding whether the interest of justice demanded that I.D.P. and W.L.G. be transferred and tried as adults. It is worth noting that our conclusion is in accord with every other circuit that has addressed and decided this issue. *See, e.g., United States v. T.F.F.,* 55 F.3d 1118, 1122 (6th Cir.1995) (stating that "[t]he clear and convincing standard is also incompatible with the discretionary nature of the transfer determination, which involves balancing the often conflicting goals of promoting juvenile rehabilitation and protecting the public

---

fact or circumstance—for example, "scope of employment"—is dispositive of a court controversy, federal courts generally do not hold the determination unreviewable.

*Id.* at ----, 115 S.Ct. at 2231. Here, unlike the circumstances presented in *Gutierrez de Martinez,* the Attorney General does not urge review; indeed, there is no potential conflict of interest or "incentive" of the U.S. Attorney to certify that a juvenile should be prosecuted in federal court. Similarly, as we have stated repeatedly, the prosecutor's certification is not determinative of the transfer decision and thus is not dispositive of any court controversy over which the court should exercise review. Although we are mindful of the Court's admonition in *Gutierrez de Martinez* that "judicial review of executive action "will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress,' " *id.* at ----, 115 S.Ct. at 2231 (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967)), we are convinced that persuasive reasons exist to find the particular executive action at issue in section 5032 unreviewable.

safety."); *United States v. Doe,* 49 F.3d 859, 868 (2nd Cir.1995)
(reasoning that the clear and convincing standard would not be
required in a transfer proceeding because "[a] transfer hearing
under the JDA is not a criminal proceeding designed to explore the
defendant's guilt or innocence ... [n]or does the hearing under the
Act affect whether the defendant will be confined, either prior to
or after trial.").  Indeed, the Supreme Court has recognized that
the use of the "clear and convincing" standard of proof is reserved
"to protect particularly important interests in a limited number of
civil cases," *California v. Mitchell Bros.' Santa Ana Theater,* 454
U.S. 90, 93, 102 S.Ct. 172, 173, 70 L.Ed.2d 262 (1981), and has
approved the use of this standard in a restricted number of cases
involving such matters as civil commitment,[7] deportation,[8]
denaturalization,[9] and libel.[10]  Although we do not minimize the
importance of the interest at stake for these appellants, the
interest does not rise to the level of constitutional gravity
identified by the Court in those rare instances in which it has
found the "clear and convincing" burden of proof to be necessary.
*See, e.g., Schneiderman,* 320 U.S. at 122-23, 63 S.Ct. at 1335
("[The] right [of citizenship] once conferred should not be taken
away without the clearest sort of justification and proof ...

---

[7]*See Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60
L.Ed.2d 323 (1979).

[8]*See Woodby v. I.N.S.,* 385 U.S. 276, 87 S.Ct. 483, 17
L.Ed.2d 362 (1966).

[9]*See Schneiderman v. United States,* 320 U.S. 118, 63 S.Ct.
1333, 87 L.Ed. 1796 (1943).

[10]*See Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29, 91 S.Ct.
1811, 29 L.Ed.2d 296 (1971).

[T]his burden must be met with evidence of clear and convincing character that when citizenship was conferred upon petitioner ... it was not done in accordance with strict legal requirements."); *Rosenbloom,* 403 U.S. at 50, 91 S.Ct. at 1823 ("[T]he vital needs of freedom of the press and freedom of speech persuade us that allowing private citizens to obtain damage judgments on the basis of a jury determination that a publisher probably failed to use reasonable care would not provide adequate "breathing space' for these great freedoms.").

Perhaps more significantly, the determination at issue in this case has no bearing on the eventual resolution of the underlying case. Stated differently, in deciding whether the government has shown by a preponderance of the evidence that the interest of justice weighs in favor of transfer, the court solely decides whether the defendants will be tried as juveniles or adults. It is critical to emphasize that this determination neither influences nor affects any issue regarding the defendants' innocence or guilt. As we emphasized in the context of certification, the court's findings with respect to transfer is the beginning—not the end—of the adjudicatory process. We therefore conclude that the district court properly required the government to prove by a preponderance of the evidence that the interest of justice weighed in favor of transfer.

### C. *Interest of Justice*

Both I.D.P. and W.L.G. argue that the district court erred in its final determination that the interest of justice militated in favor of transferring each of them to adult status. The decision

whether to transfer a juvenile to trial as an adult under section 5032 is within the sound discretion of the trial court provided the court makes findings as to the criteria outlined in the Act. *United States v. Doe,* 871 F.2d 1248, 1255 (5th Cir.), *cert. denied,* 493 U.S. 917, 110 S.Ct. 276, 107 L.Ed.2d 257 (1989). While we review the court's factual findings for clear error, we review the ultimate interest-of-justice determination for abuse of discretion. *See id.* at 1255.

Here, it is undisputed that the district court conducted a detailed examination of each of the requisite statutory factors. Briefly, with respect to I.D.P., the court made the following factual determinations: Prior to the events giving rise to the instant charges, I.D.P. had experienced "numerous contacts with the juvenile justice system." R2-23 at 18. CHINS (Child In Need of Supervision) petitions were filed against him in July, 1988, October, 1990, and November, 1990. In April, 1991, he received an informal adjustment on a criminal mischief charge and in September, 1992, following another CHINS petition, was placed on probation. In January, 1993, he was ordered to serve two week-ends at a youth center for violating his probation. In February, 1994, he was adjudicated delinquent for the unauthorized use of a motor vehicle. I.D.P. again was found in violation of probation and placed on electronic monitoring but removed the monitoring device and ran away. He subsequently was ordered to attend a "boot camp" treatment program and was placed in the custody of a legal guardian.

The court also summarized psychological evaluations showing

that I.D.P. had received various forms of counseling since the age of five but had continued to exhibit increasingly aggressive and, at times, violent behavior with family members. One of the mental health professionals that evaluated I.D.P., Dr. Chudy, found I.D.P.'s prognosis to be poor to guarded, and suggested that he would need to be in an environment where he could both be monitored by the legal system and receive "constructive treatment." *Id.* at 21. The second psychiatric counselor, Dr. Alexander, noted that I.D.P. suffers from an "evolving personality disorder" and indicated that the "likelihood that further treatment efforts would be successful is minimal to non-existent." *Id.* at 21. The court acknowledged, however, that Dr. Alexander had provided a somewhat inconclusive, incomplete report. The court also found that no treatment programs to address I.D.P.'s behavioral problems were available within the federal juvenile system.

The court balanced these findings, as required by statute, and concluded that the risk of harm to society posed by placing I.D.P. in the juvenile system outweighed his chance for rehabilitation within that system. In reaching this conclusion, the court noted that I.D.P. had a documented history of aggressive behavior and had not responded well to previous treatment. The court further noted that the crimes with which I.D.P. was charged were serious. In light of the lengthy and detailed analysis provided by the court with respect to each of the factors it was directed to evaluate and because the record contains adequate evidence to support the court's findings, we cannot conclude that the court abused its discretion in deciding that the interest of justice militated in

favor of the transfer of I.D.P. to adult status.

With respect to W.L.G., the court set forth the following factual determinations: W.L.G. received an informal adjustment for theft in 1990. Several months later, he again was charged with two counts of theft. In 1991, he was charged with receiving stolen property and placed on probation. In 1993, after a petition was filed to revoke W.L.G.'s probation, he was committed to the custody of a youth center. Following another probation revocation petition, he was placed under house arrest, suspended from school and found in violation of his curfew. In 1994, he was charged with three burglaries and committed to the Department of Youth Services.

The same mental health professionals that evaluated I.D.P. also evaluated W.L.G. Dr. Chudy found that W.L.G.'s prognosis within the juvenile system was poor and that he would respond better in a "highly structured environment." *Id.* at 14. Dr. Alexander noted that W.L.G. had "cultivated his abilities as a criminal and carries a gun with him in the community." *Id.* at 15. Alexander concluded that it was unrealistic to expect that W.L.G. could be rehabilitated by the juvenile justice system and feared that his criminal behavior could escalate with time. The court also observed that no attempt had been made to rehabilitate W.L.G. within the state juvenile system and that no programs existed within the federal juvenile system to treat his behavioral problems.

Again, we cannot say that the findings made by the district court are unsupported by the record. Moreover, in concluding that adult status was appropriate in this instance, the court considered

both the seriousness and violence of the underlying charged offense and the psychological profile of W.L.G. that emerged after two psychological evaluations.  In light of the broad deference that we afford the district court in reaching its interest-of-justice determination, we conclude that the court did not abuse its discretion.

## III. CONCLUSION

I.D.P. and W.L.G. challenge the district court's order granting the government's motion to transfer each juvenile to adult status on the grounds that the district court lacked jurisdiction over this case, applied an incorrect standard of proof in evaluating the propriety of transfer, and abused its discretion in finding that I.D.P. and W.L.G. should be tried as adults.  We conclude that (1) the government's certification that the underlying offenses charged in this action gave rise to a substantial federal interest is not subject to judicial review, (2) the court did not err in requiring the government to prove by a preponderance of the evidence that the interest of justice weighed in favor of transfer, and (3) the court did not abuse its discretion in balancing the statutory factors required to reach its determination that these juveniles should be tried as adults. Accordingly, we AFFIRM.