USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 98-1807

 UNITED STATES,

 Appellee,

 v.

 MICHAEL S. SMITH, A/K/A JUVENILE, MALE,

 Defendant, Appellant.

 ____________________

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. Gene Carter, U.S. District Judge]

 ____________________

 Before

 Boudin, Circuit Judge,

 Magill, Senior Circuit Judge,

 and Lynch, Circuit Judge.

 _____________________

 William Maselli, by appointment of the Court, with whom Law
Offices of William Maselli was on brief, for appellant.
 F. Mark Terison, Assistant United States Attorney, with whom
Jay P. McCloskey, United States Attorney, was on brief, for
appellee.

 ____________________

 May 17,1999
 ____________________ MAGILL, Senior Circuit Judge. Michael S. Smith was over
seventeen years old on the night he and two others committed an
armed carjacking and two armed robberies. A federal criminal
complaint was filed and, based on the United States Attorney's 18
U.S.C. 5032(3) certification that a "substantial Federal
interest" in the case justified federal jurisdiction, the district
court held that it had jurisdiction. After the district court
granted the government's motion to transfer Smith for prosecution
as an adult, Smith entered a conditional guilty plea. On appeal,
he challenges both the certification that a substantial federal
interest in this case warranted federal jurisdiction and the
district court's decision to transfer him for adult prosecution. 
We affirm and join five of our sister circuits in holding that
certification of a substantial federal interest is not reviewable.
 I.
 During the evening of February 6, 1997, Michael Smith,
who was just eight months shy of his eighteenth birthday and
serving a term of probation for one of his previous four criminal
convictions, went on a crime spree with Robert Newell (Newell), an
adult, and Robert W. (Robert), a juvenile. That night, they
committed two armed robberies and one armed carjacking. They first
decided to rob an apartment. After entering the apartment, Robert
menaced each of the occupants with a handgun while Smith held a
butcher knife against the throat of one of the occupants. When
making their getaway from the apartment, Newell, Robert, and Smith
came across a woman unloading groceries from her car. Robert
grabbed her, pointed the gun in her face, and demanded that she
give him the car keys. After taking the woman's car, they realized
that they needed gasoline and stopped at a gasoline station. While
Robert pumped gas, Smith entered the station, pointed the gun at
the cashier, and demanded that she give him some cigarettes. After
taking the cigarettes and informing the cashier that they would not
pay for the gas, the three left the gas station.
 The gas station cashier then called the police and
reported the crime. When officers spotted the stolen car, a chase
ensued. Eventually, Robert lost control of the car and drove down
an embankment. Although both Robert and Smith jumped out of the
car and attempted to flee, the police quickly apprehended them.
 After Smith's arrest, a federal criminal complaint was
filed, charging him in two counts. The first count charged Smith
with conspiracy, in violation of 18 U.S.C. 371, to interfere with
commerce by means of robbery, in violation of 18 U.S.C. 1951, and
to take a motor vehicle by means of force, violence and
intimidation, and with the intent to cause death or serious bodily
harm, in violation of 18 U.S.C. 2119. The second count charged
him with using and carrying a firearm in connection with the
conspiracy, in violation of 18 U.S.C. 924(c)(1). Pursuant to 18
U.S.C. 5032(3), the United States Attorney certified that Smith
was a juvenile and that there was a "substantial Federal interest"
in the case and the offenses to warrant the exercise of federal
jurisdiction. The United States Attorney also filed a motion to
transfer Smith for prosecution as an adult.
 Smith filed a motion to dismiss the case for lack of
federal jurisdiction, contending that there was not a substantial
federal interest. The district court denied the motion, finding
that the United States Attorney's certification of a substantial
federal interest was unreviewable.
 Smith also objected to the government's transfer motion. 
After appointing a psychologist to examine Smith and conducting a
hearing, the district court granted the government's motion to
transfer. In doing so, the court "place[d] primary importance on
the seriousness of the crimes committed by [Smith]." United States
v. MS-Juvenile Male, No. 97-6-P-C, slip op. at 10 (D. Me. Feb. 4,
1998).
 Smith subsequently entered a conditional guilty plea. On
appeal, he contends that (1) the district court erred in refusing
to review the United States Attorney's certification that a
substantial federal interest exists in this case and (2) the
district court abused its discretion in granting the government's
motion to transfer.
 II.
 This case requires this court to delve into the procedure
set forth in 18 U.S.C. 5032 for trying a juvenile in federal
court and for transferring such a juvenile for prosecution as an
adult. In relevant part, 5032 provides that a district court has
jurisdiction over a juvenile if "the Attorney General, after
investigation, certifies to the appropriate district court of the
United States that . . . (3) the offense charged is a crime of
violence that is a felony . . . and that there is a substantial
Federal interest in the case or the offense to warrant the exercise
of Federal jurisdiction." 18 U.S.C. 5032. Once federal
jurisdiction has attached, juvenile delinquency proceedings ensue
unless the court transfers the juvenile for prosecution as an
adult. If the government files a motion for transfer on the ground
that the felony is a "crime of violence," the court must hold a
hearing, consider evidence of the six specific factors set forth in
 5032, and make "findings with regard to each factor . . . in the
record." Id. The district court then must weigh the factors and
determine whether a "transfer would be in the interest of justice." 
Id.; see also United States v. Hemmer, 729 F.2d 10, 17-18 (1st Cir.
1984). If the court deems a transfer would be in the interest of
justice, the court may transfer the juvenile for prosecution as an
adult.
 A. Certification
 Smith first contends that the district court erred in
concluding that it lacked jurisdiction to review the United States
Attorney's certification made pursuant to 5032(3) that a
"substantial Federal interest" warranted federal prosecution. 
Although this court has not yet determined whether a court has
jurisdiction to review a United States Attorney's certification
that there is a "substantial Federal interest" in a particular
case, five of the six other circuits addressing this issue have
held that a court may not review such a certification. See United
States v. Juvenile Male J.A.J., 134 F.3d 905 (8th Cir.), cert.
denied, 118 S. Ct. 2388 (1998); In re Sealed Case, 131 F.3d 208
(D.C. Cir. 1997); United States v. Juvenile No. 1, 118 F.3d 298
(5th Cir.), cert. denied, 118 S. Ct. 457 (1997); Impounded, 117
F.3d 730 (3d Cir. 1997); United States v. I.D.P., 102 F.3d 507
(11th Cir. 1996). Only the Fourth Circuit has permitted judicial
review of the existence of a substantial federal interest in a
 5032 certification. See United States v. Juvenile Male #1, 86
F.3d 1314 (4th Cir. 1996). 
 We agree with the great majority of circuits that hold
that "the United States Attorney's certification of a substantial
federal interest is an unreviewable act of prosecutorial
discretion." Juvenile Male J.A.J., 134 F.3d at 909. As explained
more thoroughly by the Eighth Circuit in Juvenile Male J.A.J. and
the Third Circuit in Impounded, the statute's text and structure,
as well as separation of powers concerns, support our conclusion
that a federal court may not review a United States Attorney's
certification of a substantial federal interest. See Juvenile
Male J.A.J., 134 F.3d at 906-09; Impounded, 117 F.3d at 733-37. 
 The text of 5032 does not specifically provide for
judicial review of a certification and fails to articulate any
standards for determining the existence of a substantial federal
interest. Conversely, 5032 "expressly provides for judicial
review of orders transferring a juvenile for adult prosecution and
outlines standards for courts to apply, yet it is silent regarding
review of certification." In re Sealed Case, 131 F.3d at 212. 
Like the Eighth Circuit, we believe that "Congress's decision to
specifically allow judicial review of transfer, but not of
certification of a substantial federal interest, is powerful
evidence that judicial review of the latter is barred." Juvenile
Male J.A.J., 134 F.3d at 908; see also Juvenile No. 1, 118 F.3d at
305 ("We find it difficult to conclude that Congress intended to
leave the courts to their own devices in determining whether a
'substantial Federal interest' exists 'to warrant the exercise of
Federal jurisdiction,' while specifying with such care the
considerations that must inform a court's evaluation of whether a
transfer would be 'in the interest of justice' in a particular
case."). In addition, we note that "the exercise of prosecutorial
discretion, at the very core of the executive function, has long
been held presumptively unreviewable." In re Sealed Case, 131 F.3d
at 214; see also Wayte v. United States, 470 U.S. 598, 607 (1985)
(noting that "the decision whether or not to prosecute, and what
charge to file or bring before a grand jury, generally rests
entirely in [the prosecutor's] discretion" and "[t]his broad
discretion rests largely on the recognition that the decision to
prosecute is particularly ill-suited to judicial review" (internal
quotation marks omitted)). "In the context of certification under
this statute, the government's authority to ascertain the presence
of a substantial federal interest is no different from its
authority to decide whether to prosecute a case in a federal forum. 
This type of decision falls squarely within the parameters of
prosecutorial discretion that [is unreviewable]." I.D.P., 102 F.3d
at 511; see also Juvenile No. 1, 118 F.3d at 306 (agreeing that
"the government's authority to certify that a given case implicates
a substantial federal interest is akin to the government's
authority to decide which cases to prosecute" (internal quotation
marks omitted)). Furthermore, we agree with the Fifth Circuit that
the "legislative history . . . also indicates congressional intent
to vest the federal prosecutor, not the court, with authority to
decide whether a substantial federal interest exists in a
particular case." Id.; see generally id. at 306-07 (analyzing
legislative history); I.D.P., 102 F.3d at 512-13 (same).
 Based on the foregoing, we conclude that United States
Attorney's certification of a substantial federal interest
constitutes an unreviewable act of prosecutorial discretion. 
Accordingly, we affirm the district court's refusal to review the
United States Attorney's certification that a "substantial Federal
interest" warrants prosecuting Smith in federal court. Because
Smith raises no other challenges to the certification, we find
that the district court properly exercised jurisdiction over Smith. B. Transfer
 Smith next contends that the district court erred in
concluding that transferring him for prosecution as an adult "would
be in the interest of justice." 18 U.S.C. 5032. We disagree.
 So long as the district court makes findings as to the
six criteria outlined in 5032, we review the district court's
interest-of-justice determination for an abuse of discretion. See
Hemmer, 729 F.2d at 17-18. The district court's findings of fact
underlying the transfer decision are reviewed under the clearly
erroneous standard. See, e.g., United States v. Parker, 956 F.2d
169, 171 (8th Cir. 1992); Fed. R. Civ. P. 52(a).
 Smith has undertaken a difficult burden in challenging
the transfer. "[N]o court of appeals has ever found that a
district court abused its discretion by failing to balance properly
the six statutory factors." United States v. Juvenile Male # 1, 47
F.3d 68, 71 (2d Cir. 1995) (citing cases). This includes every
published case where "the juvenile was transferred to adult status
for the crime of armed robbery," United States v. Doe, 871 F.2d
1248, 1252 (5th Cir. 1989) (citing cases from three other
circuits), or for the crime of armed carjacking, see United States 
v. Wellington, 102 F.3d 499, 506 (11th Cir. 1996); United States v.
A.R., 38 F.3d 699, 705 (3d Cir. 1994). 
 As required by 5032, the district court considered and
made written findings as to each of the following six factors: (1)
"the age and social background of the juvenile;" (2) "the nature of
the alleged offense;" (3) "the extent and nature of the juvenile's
prior delinquency record;" (4) "the juvenile's present intellectual
development and psychological maturity;" (5) "the nature of past
treatment efforts and the juvenile's response to such efforts;" and
(6) "the availability of programs designed to treat the juvenile's
behavioral problems." 18 U.S.C. 5032. The district court found
that (1) Smith joined a gang at age fourteen, fathered a child at
age fifteen, and committed the instant offenses at the age of
seventeen years and four months; (2) the instant offenses--two
armed robberies and one armed carjacking--"undoubtedly qualif[y]
among the most serious and violent acts this Court is presented
with each day," slip op. at 9-10; (3) Smith's previous criminal
record included four convictions over the course of five years and
seven additional criminal charges which had been dismissed; (4)
Smith's psychological maturity is somewhere between adolescence and
adulthood, and Smith has a broad range of psychological and
behavioral problems which reflect a Borderline Personality Disorder
and are complicated by Smith's history of alcohol and drug abuse;
(5) treating Smith as a juvenile in the past had proved to be
ineffectual (not only did Smith have an extensive criminal record,
but he was serving a term of probation at the time he committed the
instant offenses); and (6) it could not be sure that the federal
juvenile system had sufficient treatment programs available for
Smith. On the basis of its findings, and relying primarily on the
egregiousness of the instant offenses, the court concluded that
transferring Smith for adult prosecution would be in the interest
of justice.
 Having carefully reviewed the record, we conclude that
the district court's findings as to each factor are not clearly
erroneous. Although Smith challenges the manner in which the
district court weighed the various factors, we have previously
explained that "it is within the district court's reasoned
discretion as to what weight to assign each factor." Hemmer, 729
F.2d at 17; see also Wellington, 102 F.3d at 506 (explaining that
a district court is "not required to weigh all statutory factors
equally" (internal quotation marks omitted)). Courts have
unanimously held that a district court does not abuse its
discretion in placing primary emphasis on the gravity of the
juvenile's offense. See Hemmer, 729 F.2d at 18 ("In light of the
gravity of the crime involved [(armed robbery)], weighed against
the other five section 5032 factors, we cannot say that the
district court struck the balance improperly."); see also Juvenile
No. 1, 118 F.3d at 307 (explaining that "[t]he seriousness of the
offense, for instance, can be given more weight than other factors"
(internal quotation marks omitted)); Wellington, 102 F.3d at 506
(holding that "a district court is entitled to give more weight to
the seriousness of the offense than to other factors"); A.R., 38
F.3d at 705 (holding that the district court did not err by placing
strong reliance on juvenile's crime--armed carjacking); Doe, 871
F.2d at 1255 (also holding that the district court did not err in
placing strong emphasis on juvenile's crime--armed robbery). 
Moreover, the proximity of a juvenile's age to age eighteen is
another important factor for the court's consideration. See
Wellington, 102 F.3d at 506-07 & n.7. Smith was only eight months
shy of eighteen at the time he committed these three armed criminal
offenses. In view of the gravity of the instant offenses, Smith's
age when he committed those offenses, and Smith's extensive
criminal record, we find that the district court did not abuse its
discretion in concluding that transferring Smith for adult
prosecution would be in the interest of justice.
 III.
 For the foregoing reasons, we affirm the district court.