

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-1997

# Impounded v.

Precedential or Non-Precedential:

Docket 96-7781

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Impounded v." (1997). *1997 Decisions.* Paper 141.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/141

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 30, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 96-7781

IMPOUNDED
(Juvenile R.G., Appellant)

On Appeal From the District Court of
the Virgin Islands (Division of St. Croix)
(D.C.Crim No. 96-cr-00046)

Argued: April 9, 1997

Before: BECKER, ROTH, and WEIS,
Circuit Judges.

(Filed June 30, 1997)

THURSTON T. McKELVIN, ESQUIRE
Federal Public Defender
MELODY M. WALCOTT, ESQUIRE
 (ARGUED)
Assistant Federal Public Defender
P.O. Box 3450
Christiansted, St. Croix
U.S. Virgin Islands 00822

Attorneys for Appellant

JAMES A. HURD, JR., ESQUIRE
United States Attorney
RICHARD M. PRENDERGAST,
 ESQUIRE (ARGUED)
Assistant United States Attorney
1108 King Street - Suite 201
Christiansted, St. Croix
U.S. Virgin Islands 00820

<u>Attorneys for Appellees</u>

**OPINION OF THE COURT**

BECKER, <u>Circuit Judge</u>.

This appeal by a juvenile defendant charged with a number of serious crimes challenges the authority of the United States government to prosecute him in federal court. The governing statute is 18 U.S.C. § 5032, which establishes a two-step procedure governing the transfer of juveniles from state to federal court for criminal prosecution. The appeal presents the important question, which has divided the circuits, whether the certification decision of the United States Attorney General or her designee -- the first-step in the transfer proceedings -- is reviewable by a federal court.

Because we believe that the core of the decision to certify is one left to the discretion of the federal prosecutor, we follow the majority circuit view and hold that we have jurisdiction to review only limited aspects of the certification decision, including whether the certification is proper in form, whether it was made in bad faith, and the purely legal question whether the juvenile has been charged with a crime of violence.

Our conclusion as to our limited ability to review a certification decision effectively resolves the question whether the prosecutor made a proper certification here, for the non-reviewable facets of the certification (that the Virgin Islands refuses to assume jurisdiction and that the case presents a substantial federal interest) are sufficient and sustain the certification.

2

The second-step question, whether the district court properly allowed the transfer of the juvenile to adult status under the so-called mandatory transfer provisions of § 5032, turns on whether the possession crime with which the juvenile was charged, see V.I. Code Ann. tit. 14, § 2251(a)(2), involves a substantial risk of the use of physical force. Because the possession crime includes as an element of the offense the intent to use a dangerous weapon, and the commission of the crime will therefore present a substantial risk that physical force will be used, we hold that the possession crime satisfies the requirements of the § 5032 mandatory transfer provisions. The order of the district court transferring the juvenile's case to federal court will thus be affirmed.

I. SECTION 5032 TRANSFERS

In order to facilitate the understanding of the issues, we first describe the provisions in 18 U.S.C. § 5032 pertaining to the transfer of a juvenile from state authorities to a federal district court for criminal prosecution as an adult. Transfer proceedings are governed by a two-step process. The first step is certification by the Attorney General or her designee, normally a United States Attorney. The certifying party must certify either that

(1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, (2) the State does not have available programs and services adequate for the needs of juveniles, or (3) the offense charged is a crime of violence that is a felony or [is] an offense [specifically enumerated in this paragraph], and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction.

18 U.S.C. § 5032.1

---

1. We recognize that § 5032 might be read to mean that the certifying party must, in all cases, certify that there is a substantial federal interest. That reading, although plausible, is a function of inartful

3

Contingent upon a proper certification, the federal prosecutor may move in the appropriate district court for a transfer of the juvenile to adult status -- the second step in the transfer process. Section 5032 envisions two avenues by which a transfer may occur. First are the so-called permissive transfer provisions. Under the permissive transfer provisions, the district court may transfer a juvenile "if such court finds, after hearing, such transfer would be in the interest of justice." Id. To assess whether

_____

drafting of the statute. Following the phrase in the sentence that reads "the Attorney General, after investigation, certifies to the appropriate district court of the United States that" (emphasis added) there are three choices. Separating that phrase and the three choices from the substantial federal interest phrase are the words "and that" preceded by a comma. Simplifying the sentence, then, it reads as follows: "the Attorney General, after investigation, certifies to the appropriate district court of the United States that [A, B, or C], and that [D]." (emphasis added) The "A, B, or C" represents the phrase containing the three choices; the "D" is the phrase containing the substantial federal interest. Thus, one might read the statute to require that the Attorney General certify everything following the two uses of the word "that," i.e., the Attorney General must always certify to the existence of a substantial federal interest.

However, this reading does not comport with the legislative history of the 1984 amendment to § 5032 that added the language referring to crimes of violence and to a substantial federal interest. A Senate report stated that the 1984 amendment added a "third category to existing law that would permit the disposition of a case involving a juvenile charged with a serious felony by means of a Federal proceeding . . . if the Attorney General certifies that the offense is a felony crime of violence . . . and that there is a `substantial Federal interest in the case or offense to warrant the exercise of Federal jurisdiction.' " S. Rep. No. 98-225, at 389 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3529 (footnote omitted). Thus, we believe that the proper reading of § 5032 includes the substantial federal interest requirement within the third category of choices to which the Attorney General must certify. In other words, using the same representation as that used above, the certifying party must certify to (A), (B), or (C and D). Our reading comports with that of the Ninth Circuit, see United States v. Doe, 13 F.3d 302, 304 n.1 (9th Cir. 1993), and the Department of Justice, see 3(a) United States Department of Justice, United States Attorneys' Manual § 9-8.110 (1988).

4

a transfer would be "in the interest of justice," the statute directs the court to examine:

the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems.

Id.

The second avenue by which a juvenile may be transferred to adult status is by way of the mandatory transfer provisions. Pursuant to § 5032, a district court shall transfer the juvenile if three factors are present: (1) the juvenile committed the act underlying the charged offense after his sixteenth birthday; (2) the charged offense is a felony that has as an element the use of physical force or by its nature involves the risk of physical force, or is an offense specifically enumerated in the paragraph; and (3) the juvenile has previously been found guilty of a crime that would satisfy factor (2). Id.

II. FACTS AND PROCEDURAL HISTORY

The core offense involves a carjacking. In January 1995, a young woman drove to her parents' house to pick up her sister. Just after the sister entered the car outside the house, two masked men, one of whom was armed, approached the car and demanded the keys. The women complied and ran back inside the house. Their father then went outside, but returned immediately to the house when he heard a gun shot. The two men drove off. The police located the car the following day; a stereo system and a cellular phone had been stolen from the car.

One of the young women named the juvenile as her assailant. The Virgin Islands police located the juvenile, arrested him, and charged him with robbery, assault, and possession of a firearm during the commission of a crime of violence. The Territorial Court of the Virgin Islands ordered

5

that the juvenile be prosecuted in that court as an adult. Then, pursuant to an agreement with the United States Attorney for the Virgin Islands, the Government of the Virgin Islands declined to prosecute the juvenile. Shortly thereafter, the United States Attorney filed an Information in the District Court of the Virgin Islands charging the juvenile with carjacking, robbery, use of a firearm during a crime of violence, and possession of a firearm during a crime of violence. The United States Attorney also made the requisite certification under § 5032, and moved under both the mandatory and permissive provisions of § 5032 to transfer the juvenile to adult status.

The district court held a hearing to determine whether transfer to adult status was appropriate. The court concluded that all three elements of § 5032's mandatory transfer provisions were met: the juvenile was more than sixteen years of age when the crime was alleged to have been committed; each of the crimes for which he was charged had as an element "the use, attempted use, or threatened use of physical force . . . or . . . involved a substantial risk that physical force [may be used] against . . . another"; and the juvenile had previously been found guilty of a violent crime. The court therefore ordered the transfer of the juvenile to adult status.

The juvenile appeals from the district court's transfer order. Included in that appeal is a challenge to the § 5032 certification. We will assume that the § 5032 certification is a prerequisite to the district court exercising jurisdiction over the transfer hearing. Therefore, whether the district court properly exercised jurisdiction over the § 5032 transfer hearing turns on whether the certification was proper. Although the order from which the juvenile appeals is not "final" for the purposes of 28 U.S.C.§ 1291 or 48 U.S.C. § 1613a(c), we have appellate jurisdiction pursuant to the collateral order doctrine. See In re A.M., 34 F.3d 153, 155-56 (3d Cir. 1994).

6

III. REVIEW OF THE PROSECUTOR'S § 5032
CERTIFICATION

A. <u>Is a § 5032 Certification Reviewable?</u>

As a threshold matter, we must determine whether we have jurisdiction to review the prosecutor's § 5032 certification. Although this is an issue of first impression for us, we do not write on a blank slate, for a number of Courts of Appeals have already published opinions on the point, from which we draw instruction.[2]

The seminal case is <u>United States v. Vancier</u>, 515 F.2d 1378 (2d Cir. 1975). In <u>Vancier</u>, the United States Attorney had certified to the district court that no appropriate state court had jurisdiction over the defendant.[3] On appeal, Vancier argued that the certification was improper because there existed an "appropriate" state court with jurisdiction over him. The court noted, however, that § 5032 does not explicitly provide for judicial review of a certification, nor does it provide articulable standards against which a court could measure whether an appropriate state court could exercise jurisdiction over the juvenile. <u>See id.</u> at 1380. It concluded that, although the statute provides some limitations on the prosecutor's discretion to certify a juvenile for federal jurisdiction, those limitations do not afford the courts the power to review the exercise of that discretion. <u>See id.</u> at 1380-81. Analogizing the certification decision to other non-reviewable determinations made by

---

2. It is interesting to note that both Houses of Congress are currently considering legislation that would amend § 5032 to make clear that the necessary certifications are not reviewable by any court. The House of Representatives has already passed a version of the legislation, <u>see</u> Juvenile Crime Control Act of 1997, H.R. 3, 105th Cong. § 101 (1997), and the Senate is actively deliberating about another version, <u>see</u> Violent and Repeat Juvenile Offender Act of 1997, S.10, 105th Cong. § 102(a) (1997). We understand, of course, that the legislation may change prior to enactment, if it is enacted at all.

3. At the time of the <u>Vancier</u> case, § 5032 did not contain the option to certify that the juvenile was charged with a crime of violence or with one of the enumerated crimes, or the requirement that such a case present a substantial federal interest.

7

law enforcement officials, the court held that the§ 5032 certification is unreviewable. See id. at 1381.

Other circuits have reached a similar conclusion. The Eleventh Circuit, in United States v. C.G., 736 F.2d 1474 (11th Cir. 1984), adopted the reasoning of Vancier and held that a court could not review the correctness of a § 5032 certification asserting that an appropriate state court did not have jurisdiction over the juvenile. See id. at 1477-78. The Eleventh Circuit suggested, however, that it could review a certification to ensure that the certifying party was authorized under the statute, that the certification was timely filed, and that it stated the appropriate statutory factors that give rise to federal jurisdiction. See id. at 1477. The court also suggested that it would be appropriate to inquire into whether the certification was made in bad faith. See id. at 1478; see also United States v. Wellington, 102 F.3d 499, 503-05 (11th Cir. 1996) (reaffirming the holding of C.G.). Similarly, the Ninth Circuit held that "[w]here . . . a certificate was timely filed, and that certificate appeared regular on its face, the trial judge has no duty independently to investigate and determine if the certificate refers to the proper state court." United States v. Gonzalez-Cervantes, 668 F.2d 1073, 1078 (9th Cir. 1981).

In 1984 Congress amended § 5032, adding the option that a prosecutor's certification could include the statement that the crime charged was one of violence or was one specifically enumerated. In United States v. Juvenile Male, 923 F.2d 614 (8th Cir. 1991), the juvenile challenged the certification of the charged offense as a crime of violence. See id. at 616. The court held that review of a § 5032 certification that the juvenile was charged with a crime of violence was appropriate. The court summarized Vancier and C.G. and then concluded that "[n]either of the . . . cases persuades us that we cannot review certification here." See id. at 617. The Eighth Circuit believed both that it had a standard against which to judge the correctness of the certification (whether a crime is one of violence is a legal question) and that it was merely ensuring that the form of the certification was correct (a certification based on the type of crime charged must state one of the crimes enumerated in the statute (a crime of violence is an enumerated crime)). See id. at 617.

8

We do not, however, read the Eighth Circuit as generally allowing review of a § 5032 certification, or departing from the general principles established in the cases cited above. Rather, the holding in Juvenile Male is limited to review of whether the crime for which the juvenile was charged was actually a crime of violence. The Eighth Circuit's reasoning is consistent with the opinions that have not allowed review of a § 5032 certification; those opinions focused on different aspects of the certification decision, aspects that focused on prosecutorial discretion, and the lack of standards guiding review of the decision to certify. Such concerns, as the Eighth Circuit pointed out, are not implicated by a certification that a crime is one of violence, because whether a crime is one of violence is determined by congressionally created statutory standards. See id. at 617-18. Our view of Juvenile Male is bolstered by the Second Circuit's recent decision in United States v. Doe, 49 F.3d 859 (2d Cir. 1995). In Doe, the Second Circuit also reviewed a § 5032 certification to determine whether the crime charged was one of violence. See id. at 866-67.4

The 1984 amendments also added the language requiring that the Attorney General or her designee certify "that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction." 28 U.S.C. § 5032. Although an argument can be made that this language introduced an articulable standard against which a court could review certain aspects of certification decisions, courts have been unimpressed with that contention and have held that this aspect of the certification decision, like the other aspects described above, is unreviewable. The Eleventh Circuit so held in United States v. I.D.P., 102 F.3d 507 (11th Cir. 1996), stressing that, although the statute provided a list of factors for a court to consider in determining whether to grant a motion to transfer, none was a factor by which a

_____

4. Interestingly, the court cited to Juvenile Male, but did not cite to Vancier. We assume that the court did not intend to overrule Vancier; therefore, we also assume that the court believed it was acting consistently with Vancier. In other words, Doe can be read to mean that the Second Circuit allows review of some aspects of a § 5032 certification, but not others, the very conclusion we reach here.

9

court could meaningfully determine whether there existed a substantial federal interest. See id. at 511.

The court further reasoned that the determination whether a particular case presented a substantial federal interest was an administrative decision that turned on law enforcement considerations such as the general incidence of crime, the need for deterrence, enforcement priorities, and the like. See id. at 511-12. Such decisions, it noted, are best left to the prosecutors. Finally, the court examined the legislative history of the 1984 amendment, and concluded that this history suggested that Congress intended the decision whether there existed a substantial federal interest to be left to the discretion of the Attorney General, qualified by a number of limiting factors not contained in the statute itself. See id. at 512-13.

The only case finding a certification of a substantial federal interest to be reviewable is United States v. Juvenile Male #1, 86 F.3d 1314 (4th Cir. 1996). In Juvenile Male #1, the juvenile had moved to dismiss the case against him in federal court on the grounds that the § 5032 certification was improper because the case did not present a substantial federal interest, and the district court denied his motion. The appeals court began by examining whether the district court had jurisdiction to review a § 5032 certification at all.5 It first noted that the lack of a specific provision calling for judicial review does not bar review, and asserted that there is a strong presumption that Congress

_____

5. The court stated that "[i]t should be beyond serious argument that the courts should review compliance with the essentially technical requirements of § 5032, such as the proper certifying party, timeliness of the certification, inclusion of the statutory language, or the age of the juvenile." See Juvenile Male #1, 86 F.3d at 1319 (citations omitted). We agree, and would add that we may review whether the certification was made in bad faith. We note that the appellant here does not challenge the § 5032 certification for technical defects. There is no suggestion that the form of the certification is incorrect (for example, whether a prosecutor certified that the juvenile is charged with a crime not enumerated in the statute), that the certification was untimely filed, that an improper official made the certification, or that it was made in bad faith or for an improper purpose. Nor does evidence of such appear in the record.

10

intends judicial review. See id. at 1319-20. And, the court continued, it could find nothing in the statute that overcomes this strong presumption in favor of reviewability. See id. at 1320. The court concluded its brief discussion by noting that it would give primary attention to the needs of rehabilitation in construing the juvenile statutes. See id. In reaching its conclusion, the court relied on Gutierrez de Martinez v. Lamagno, ___ U.S. ___, 115 S. Ct. 2227 (1995), a case from which the concurrence also draws significant support, for the proposition that executive determinations are generally subject to judicial review. See Juvenile Male #1, 86 F.3d at 1319.

Chief Judge Wilkinson, in his concurring opinion, reached the conclusion that such certifications are unreviewable. Judge Wilkinson began by noting that the statute contains no provision explicitly allowing for judicial review of § 5032 certifications, though it does provide for judicial review of the second step -- the motion to transfer the juvenile. See United States v. Juvenile Male #1, 86 F.3d 1314, 1324 (4th Cir. 1996) (Wilkinson, C.J., concurring). More importantly, he stressed that the statute does not set out standards by which a court is to review the certification, whereas, in contrast, the statute includes a list of factors a court is to consider when determining whether the motion to transfer the juvenile is appropriate. See id. at 1324-25.6 This lack of guidance suggested to Judge Wilkinson that Congress intended the determination whether to issue a certification to be left to the discretion of the Attorney General, limited only by the requirement that the case present a substantial federal interest. See id. at 1325.

Whether a case presents a substantial federal interest, Judge Wilkinson continued, turns on policy-based determinations of law enforcement priorities that are best left to the prosecutors. See id. Judge Wilkinson feared that allowing courts to review § 5032 certification decisions

_____

6. For permissive transfers, these factors include the six aspects of the "interest of justice" standard; for mandatory transfers, these factors include the age of the juvenile, the type of offense for which he has been charged, and his past criminal record. See supra at part I.

11

would engender interbranch conflict as courts would second-guess decisions decidedly executive (not judicial) in nature. See id. at 1325-26. Judge Wilkinson compared the § 5032 certification decision to other, similar prosecutorial decisions that have traditionally been unreviewable. See id. at 1326. Finally, Judge Wilkinson distinguished Gutierrez de Martinez. He noted that in Gutierrez de Martinez the certification at issue was " `dispositive of a court controversy.' " Id. at 1326 n.2 (quoting Gutierrez de Martinez, 115 S. Ct. at 2231).7 In such circumstances, judicial review is expected. However, § 5032 certifications, Judge Wilkinson notes, are not dispositive of the controversy. See id. In other words, a § 5032 certification does not prevent judicial review of all aspects of the relevant case. The concerns animating the Court in Gutierrez de Martinez, then, do not apply in§ 5032 certifications.

We agree with Judge Wilkinson's reasoning and observations, adding a few comments about the federalism concerns implicated by § 5032 certifications upon which the concurring opinion relies. Whether a case presents a substantial federal interest does, of course, implicate federalism concerns. Such concerns, rooted in the debate over the proper relationship between the states and the federal government, are different in kind from law enforcement considerations. Concerns over law enforcement are best left to the discretion of prosecutors closest to these problems. Concerns over federalism, in contrast, might seem more properly considered by the courts. That review in contexts such as that presented here, however, depends on adequate statutory standards, and those standards are lacking. Even if they were present, the other factors weighing against judicial review of a certification of substantial federal interest (mentioned during our summary of the case law in the area) clearly prevail.

The concurring opinion observes that the federal courts are experienced in making judgments as to matters such as

---

7. Judge Wilkinson also noted that the Attorney General had argued in favor of judicial review. See Juvenile Male #1, 86 F.3d at 1326 n.2 (Wilkinson, C.J., concurring).

what constitutes a substantial federal interest. We do not know specifically what the concurrence has in mind, but we know of no satisfactory formula for making such judgments within the framework of our jurisprudence.8 At all events, the exercise at issue here is more akin to policy making.

The remaining rationale of the concurring opinion strikes us as somewhat ephemeral. It suggests that Congress added the substantial federal interest requirement with the intent of reminding federal prosecutors of the strong interest the states have in juvenile justice. It also draws support from the fact that the decision to certify has been delegated to local United States Attorneys who may be subject to parochial concerns, thereby lessening their concern with the interests of federalism. These reasons seem speculative to us, and do not, in our view, reveal a congressional intent that the substantial federal interest certification be subject to judicial review. At all events, the arguments do not countervail the forceful contentions marshaled by our sister circuits in the opinions we have

_____

8. The concurring opinion points to language in the legislative history of the 1984 amendments and suggests that such language provides some guidance as to what constitutes a substantial federal interest. That language, however, only provides examples. And, unfortunately, those examples are, for the most part, crimes that make up only a minuscule fraction of total federal crime, e.g., assaults on federal officials, hijacking, kidnaping, major espionage, and significant destruction of federal property. The only example given in the legislative history that deals with frequently occurring crimes is large-scale drug trafficking. It is interesting to note in this regard that federal courts have concurrent jurisdiction with the state courts over drug crimes, and the decision whether to prosecute drug crimes in the federal courts is generally left to the discretion of federal prosecutors.

As an example of the difficulty presented by endeavoring to define standards against which phrases such as "substantial federal interest" can be measured, we suggest examining the Judicial Conference's attempts to draw the contours of the kinds of cases that ought to command the attention of federal courts. Despite the years of effort that went into its drafting, the Long Range Plan for the Federal Courts ultimately adopted provisions that are quite broad, and scarcely provide the calipers for making the kind of determination for which the concurrence would call. See Judicial Conference of the United States, Long Range Plan for the Federal Courts 22-30 (1995).

13

summarized (and, in large measure, endorsed). The concurrence also notes that there must be a "finding" of a substantial federal interest, and reasons that this suggests judicial determination. We find this argument unpersuasive.

We follow Judge Wilkinson's lead and that of Vancier and its progeny discussed above, and hold that, while we have jurisdiction to review a § 5032 certification only for technical defects, for whether a crime is one of violence, and for whether the certification was made in bad faith or for improper purposes, we have no jurisdiction to review the other aspects of a § 5032 certification, namely whether a state court will assume jurisdiction, whether the state has adequate programs for juveniles, and whether there is a substantial federal interest.9

B. Was the Certification Proper?

Having determined the extent of reviewability, we turn to the question whether the United States Attorney's § 5032 certification was proper. The United States Attorney certified that the Virgin Islands had refused to exercise jurisdiction over the prosecution of the case, that the crimes for which the juvenile was charged were ones of violence, and that the case presented a substantial federal interest. The juvenile argues that the certification was improper for two reasons. First, he claims that one of the crimes for which he was charged, possession of a firearm, is not a crime of violence.10 Second, he contends that the case does not present a substantial federal interest.

_____

9. In our discussion, we have summarized precedent from other circuits addressing the reviewability of certifications based on the type of crime charged and based upon the lack of or refusal to assume jurisdiction over the juvenile by a state court. We are unaware of any court decision addressing a certification based upon the availability of services for the juvenile. It would appear, however, that such certifications should not be subject to review for the same reasons that we do not review whether there is a state court that will assume jurisdiction over the prosecution of the case, i.e., the lack of statutory standards and the similarity of the determination to unreviewable executive decisions.

10. The juvenile was also charged with crimes that are indisputably crimes of violence. The juvenile is effectively arguing that the existence

14

Under § 5032, the federal prosecutor need only certify to one of the following: (1) that there is no appropriate state court to exercise jurisdiction over the juvenile; (2) that the state has inadequate programs to address juvenile delinquency; or (3) that the crime charged was a crime of violence or was enumerated in the statute, and there was a substantial federal interest sufficient to warrant the exercise of jurisdiction. Because the federal prosecutor here certified that no state court would exercise jurisdiction over the prosecution of the juvenile, which as we have explained is non-reviewable, there is no need also to certify that the juvenile has been charged with a crime of violence, and that there existed a substantial federal interest. We need not, therefore, discuss whether the challenged crime is one of violence or whether a substantial federal interest is present.

In short, the federal prosecutor has fulfilled the statutory requirements of certification in such a manner so as to effectively insulate the certification from our review.

IV. MANDATORY TRANSFER UNDER § 5032

We turn finally to the second step in the § 5032 exercise -- the question of the correctness of the district court's order transferring the juvenile to adult status. Our standard for reviewing such an order is not clear. We have previously stated that we review the district court's decision to transfer under the § 5032 permissive transfer provisions for abuse of discretion. See United States v. A.R., 38 F.3d 699, 702 (3d Cir. 1994). Here, however, the district court approved the transfer of the juvenile to federal district court under the so-called mandatory transfer provisions of § 5032. Because the § 5032 mandatory transfer provisions require the district court to order a transfer given certain factual and legal predicates, we believe an abuse of discretion standard is inappropriate. Rather, we will subject

_____

of one non-violent crime amidst a slew of violent crimes renders the certification improper, at least with respect to that one non-violent crime but possibly to all the charged crimes. We need not reach this question, however, because, as we will make clear in the text, the possession crime is clearly one of violence.

15

the district court's legal conclusions to plenary review and its factual findings to clearly erroneous review.

Under the mandatory transfer provisions, and contingent on a proper certification, a juvenile's case must be transferred to federal district court if three factors are present. First, the juvenile must have committed the act in question after his sixteenth birthday. Second, the charged offense must be a felony that either "[(1)] has as an element thereof the use, attempted use, or threatened use of physical force against the person of another, or[(2)] by its very nature, involves a substantial risk that physical force against the person of another may be used in committing the offense," or is one that has been enumerated in the statute. Third, the juvenile must previously have been convicted of a crime that satisfies the second factor.

The juvenile does not challenge the district court's findings as to the first and third factors (he committed the act in question while he was seventeen years old, and he has previously been found guilty of robbery in the first degree). We see no reason to question them. Turning to the second factor, the juvenile was charged with violating § 2251(a)(2), which prohibits the possession of dangerous weapons; Section 2251(a)(2) is a felony because it is punishable by a term of imprisonment greater than one year. See 18 U.S.C. § 1(1) (defining felony as "[a]ny offense punishable by death or imprisonment for a term exceeding one year"). The juvenile nonetheless contends that the possession crime for which he was charged still does not satisfy the second factor in the § 5032 mandatory transfer provisions.11

---

11. The juvenile's argument assumes that for the purposes of § 5032 we may look only to the conduct alleged in the possession count to determine whether § 2251(a)(2) satisfies the requirements of the second part of the second factor of the § 5032 mandatory transfer provisions. In other words, the juvenile seems to assume that § 5032 requires a categorical approach, rather than a fact-specific approach, to determining whether a particular crime satisfies the § 5032 requirements. That assumption draws support from our discussion of the definition of a crime of violence in the Sentencing Guidelines. See United States v. Joshua, 976 F.2d 844, 850-56 (3d Cir. 1992). In Joshua,

16

The crime challenged by the juvenile punishes those who, "<u>with intent to use</u> the same unlawfully against another, has, possesses, bears, transports, carries or has under his proximate control, a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly weapon." V.I. Code Ann. tit. 14, § 2251(a)(2) (emphasis added). Clearly, § 2251(a)(2) does not satisfy the requirements of the first part of the second factor, because no element of § 2251(a)(2) involves the "use, attempted use, or threatened use of physical force." However, just as clearly, § 2251(a)(2) satisfies the requirements of the second part of the second factor, which requires that the charged offense by its very nature involves a "substantial risk that physical force . . . may be used" during the commission of the crime. 12 Section § 2251(a)(2) includes as an element the <u>intent</u> to use a dangerous weapon. Certainly, if someone intends to use a dangerous weapon then there is "substantial risk that physical force . . . may be used." Therefore, § 2251(a)(2)

---

we held that "a sentencing court should look solely to the conduct alleged in the count of the indictment charging the offense of conviction in order to determine whether that offense is a crime of violence" because it creates a risk of the use of physical force. <u>Id.</u> at 856. In our discussion, we assume, though do not hold, that we may not look beyond the possession count to determine if the requirements of § 5032 are met. If we were to consider the charged conduct beyond the possession count, the requirements of § 5032 would surely be met; the juvenile brandished the weapon, pointed it at one of the victims, and, at some point, fired it, thereby creating a substantial risk of the use of physical force.

12. Our conclusion that § 2251(a)(2) is a crime of violence is supported by analogy to 18 U.S.C. § 16. The phrase crime of violence, though not defined in § 5032, is defined at 18 U.S.C. § 16. The language of the second factor of the § 5032 mandatory transfer provisions tracks the language of § 16 in all relevant respects. Under § 16, a crime of violence means either "(a) an offense that has as an element the use, attempted use, or threatened use of physical force . . . or (b) any other offense that is a felony and that, by its nature, involves substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Section 2251(a)(2) satisfies the requirements of § 16(b), just as it satisfied the requirements of the second part of the second factor of the § 5032 mandatory transfer provisions.

17

satisfies the second factor of the § 5032 mandatory transfer provisions.13

_____

13. Experience with the career offender provisions of the Sentencing Guidelines is instructive in interpreting § 2251(a)(2). To qualify as a career offender under the Sentencing Guidelines, an offender, inter alia, must have been convicted of two previous felony crimes of violence or felony crimes involving controlled substances. See 1995 U.S.S.G. § 4B1.1. Pursuant to the Guidelines, a crime that "involves conduct that presents a serious potential risk of physical injury to another" is a crime of violence. See id. § 4B1.2(1)(ii). Prior to the amendment, this definition generated controversy when applied to the felon-in-possession of a firearm crime. See 18 U.S.C. § 922(g)(1). Under § 922(g)(1), it is a crime for a person who has previously been convicted of a felony merely to possess a firearm. See id. "[A] substantial body of Circuit precedent" held that a felon-in-possession crime constituted a crime of violence under the Guidelines. Stinson v. United States, ___ U.S. ___, 113 S. Ct. 1913, 1916 & n.1 (1993).

Typical of the reasoning holding that a felon-in-possession crime is categorically a crime of violence is the discussion in United States v. O'Neal, 910 F.2d 663 (9th Cir. 1990). In O'Neal, the court reasoned that an armed felon, without more, poses a substantial threat of the use of physical force. See id. at 667. In other words, mere possession of a weapon by a felon is enough, because by past deeds that felon has shown the willingness to engage in criminal activity and this willingness may now include the use of the weapon he possesses. See id.; see also United States v. Stinson, 943 F.2d 1268, 1271-73 (11th Cir. 1991), vacated on other grounds, 113 S. Ct. 1913 (1993). In contrast, we had held that mere possession, without more, by a felon was not a crime of violence under the pre-amendment career offender guidelines. See United States v. Williams, 892 F.2d 296, 304 (3d Cir. 1989) Because of cases like O'Neal, the Sentencing Commission amended the Application Notes to § 4B1.2 specifically to exclude the felon-in-possession crime from the definition of crime of violence for purposes of the career offender guidelines. See 1992 U.S.S.G., App. C, Amend. 461.

The felon-in-possession crime cases are instructive here because they rely on the reasoning that mere possession may imply intent to use. The intent to use, in turn, creates the substantial risk of the use of physical force. The amendment to the Guidelines eliminated the inferential leap courts had been taking in interpreting § 922(g)(1); in other words, the Sentencing Commission made it impermissible for a court to infer for the purposes of the career offender guidelines that the status of being a felon in possession of a weapon implied that the felon intended to use the weapon. The amendment did not, however, affect the reasoning that the intent to use a weapon created a substantial risk of the use of physical

18

Because we believe the district court did not err in finding that each of the three mandatory transfer provision factors were present in this case, we hold that the court properly transferred the juvenile to federal court for criminal prosecutions.

The order of the district court will be affirmed.

_____

force. At least a part of the reasoning of the felon-in-possession crime cases survives, the part we rely on here.

At all events, § 2251(a)(2) includes as an element the intent to use the weapon the individual possesses. (Section 922(g)(1) does not include intent as an element.) Section 2251(a)(2), then, requires proof of the very element that courts interpreting § 922(g)(1) had been inferring. With proof that a defendant intends to use the weapon he possesses, a court can look to the felon-in-possession crime cases to reason that such a defendant poses a substantial risk of the use of physical force. We do so here.

19

WEIS, Circuit Judge, concurring.

**I.**

Analysis of the scope of judicial review of the government's certification under the Juvenile Delinquency Act, 18 U.S.C. § 5032, must begin with the following statement from the Supreme Court: "[W]e have stated time and again that judicial review of executive action `will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress.' " Gutierrez de Martinez v. Lamagno, 115 S.Ct. 2227, 2231 (1995) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 140 (1967)). Conceding that the statute under consideration in that case was susceptible to divergent interpretations, the Court adopted a construction consistent with "traditional understandings and basic principles: that executive determinations generally are subject to judicial review and that mechanical judgments are not the kind federal courts are set up to render." Id. at 2236.

Using Lamagno as a guide, the question is whether there is "persuasive reason" to believe that Congress intended to limit the scope of judicial review of section 5032 certifications to technical compliance and prosecutorial bad faith. Not only do careful studies of the statutory language and its legislative history fail to reveal a convincing ground to limit judicial review, they also disclose Congress' deep concern for principles of federalism that might be jeopardized by overzealous federal prosecution.

The 1984 amendments to section 5032 expanded the bases for transferring a case from state to federal jurisdiction. If the felony offense is a "crime of violence" or one of those offenses specifically described in the amendments, and "there is a substantial Federal interest in the case or the offense," the prosecution may proceed in the federal courts.

The Senate Report that accompanied the amendments acknowledged that the traditional policy of state predominance in this area survived. Explaining the narrow, federal inroad into state jurisdiction over juvenile delinquency proceedings, the Senate Committee stated:

20

The essential concepts of the 1974 Act are that juvenile delinquency matters should generally be handled by the States and that criminal prosecution of juvenile offenders should be reserved for only those cases involving particularly serious conduct by older juveniles. The Committee continues to endorse these concepts, but has determined that certain modifications in current law are necessary to allow an adequate Federal response to serious criminal conduct on the part of juveniles.

S.Rep. 98-225 at 386 (1984) reprinted in 1984 U.S.C.C.A.N. 3182, 3526.

The Committee also cautioned that "a determination that there is a `substantial Federal interest' " be grounded on a "finding" that

the nature of the offense or the circumstances of the case give rise to special Federal concerns. Examples of such cases could include an assault on, or assassination of, a federal official, an aircraft hijacking, a kidnaping where State boundaries are crossed, a major espionage or sabotage offense, participation in large-scale drug trafficking, or significant and willful destruction of property belonging to the United States.

Id. at 389 reprinted in id. at 3529.

By requiring a certification by the Attorney General, Congress emphasized that the decision to place a juvenile case within federal jurisdiction must be neither casual nor routine, but should be carefully considered. The existence of this restraint is in sharp contrast to the typical adult criminal case in which a federal prosecutor may choose to indict for a federal crime even when the underlying conduct may also violate state law. In such a situation, of course, the prosecutor enjoys wide discretion that, significantly, is unfettered by a certification requirement.

Rather than extend such unlimited discretion to the prosecutor's decision to initiate juvenile proceedings in federal court, Congress included the certification requirement to remind federal prosecutors of the strong interests that states have in juvenile justice. That

21

consideration leads to the related inference that, rather than being adverse to judicial review, Congress approves it as a method of enforcing its policy in favor of state primacy in juvenile delinquency proceedings.

Additional support for this view is supplied by the Committee's assertion that the determination of a "substantial federal interest" be based on a "finding" of special federal concerns. Use of the term "finding" reasonably implies that a judicial proceeding was contemplated.

Finally, we should not discount the significance of 28 C.F.R. § 0.57 (1996), through which the Attorney General has delegated to the United States Attorney in the appropriate district the authority to provide the requisite certification. The certification process, therefore, is not administered at the national level, but is applied in a local context where parochial concerns become more influential.

Federal courts manage caseloads that are far more diverse than those of local federal prosecutors and, as a result, have a greater familiarity with the complexities of federalism. Given the experience of the federal bench in questions of federal-state relations, it would be expected that Congress would vest oversight of these important procedures in the judiciary rather than in the local United States Attorney. At the very least, that inference should govern absent a clear indication to the contrary from Congress.

The strong language in Lamagno favoring judicial review differs dramatically from the view taken by the Courts of Appeals in United States v. Vancier, 515 F.2d 1378 (2d Cir. 1975), and to a lesser extent, United States v. C.G., 736 F.2d 1474 (11th Cir. 1984). Those opinions take a restrictive approach to judicial review of certifications under 18 U.S.C. § 5032. Both pre-dated Lamagno and, consequently, their persuasive value has been substantially undermined. In addition, the "substantial federal interest" qualification, which was added to the Juvenile Delinquency Act in 1984, also post-dates those two cases.

In United States v. I. D. P., 102 F.3d 507, 511-13 (11th Cir. 1996), the Court of Appeals for the Eleventh Circuit

22

chose to follow C.G., and to distinguish Lamagno, in holding that the courts may not review certifications to determine the existence of a substantial federal interest. In its review of the legislative history, I.D.P. observed that the Senate Report referred to a predecessor bill that set forth standards for the Attorney General to follow. The Court, however, did not discuss the fact that the earlier bill contained a provision barring judicial review of certifications -- a provision that eventually was removed. In my view, the deliberate deletion of that prohibition not only shows that Congress knew how to ban review if it wished but also that it had rejected the proposal.

The Court of Appeals for the Fourth Circuit took a different approach than I.D.P. in United States v. Juvenile Male #1, 86 F.3d 1314 (4th Cir. 1996) when it relied upon the traditional congressional preference for having juvenile matters handled in state courts, even though federal jurisdiction had been expanded in the 1984 amendments to the Juvenile Delinquency Act. Viewing the legislative history as inconsistent with the grant of unreviewable discretion to the prosecutor, Juvenile Male #1 held that the strong presumption in favor of judicial review so forcefully reiterated in Lamagno must prevail. Id. at 1321. Although the Juvenile Male #1 Court did not use the term "federalism," that consideration was at the core of its reasoning.

Those Courts that deny review of the certification process except for technical compliance and bad faith cite the lack of standards in the statutory language for substantive review. See C.G., 736 F.2d at 1478; Vancier, 515 F.2d at 1380. This reasoning is somewhat puzzling. It implies that the United States Attorneys will be able to apply the statute despite the absence of standards, but that the courts are unable to cope with the task of review in similar circumstances. If the federal prosecutors had the same broad discretion as they do when adult prosecutions are contemplated, that rationale might be justified. But, as noted earlier, Congress made it clear that the federal prosecutor's authority in the juvenile delinquency setting remains limited. Moreover, judicial deference is especially questionable here because at stake are issues of federalism

23

and the limitations of federal prosecutorial authority -- areas in which Congress reasonably could expect the courts' perspective to be more objective than that of the United States Attorneys.

The legislative history of the 1984 amendments, which explicitly stated that "the Federal Government will continue to defer to State authorities for less serious juvenile offenses," addresses this concern. The Senate Report cited certain examples of offenses raising special federal interests. Although Congress did not repeat these standards in the statute itself, they are helpful guideposts, and there is no indication that Congress intended them to inform the prosecutor's decision, but not the court's.

Finally, the search for a substantial federal interest cannot be any more difficult than, for example, "the judicial struggle to interpret the Commerce Clause during the transition from the economic system the Founders knew to the single, national market still emergent in our own era." United States v. Lopez, 115 S.Ct. 1624, 1634 (1995) (Kennedy, J., concurring). Whether the interpretative question is constitutional or statutory, the judiciary must provide an answer no matter how nebulous the standard. I believe that the federal courts have both the competence and the duty to review the certifications in section 5032 and that we should undertake that task in this case.

## II.

I agree with the majority that the dispositive issue in this case is whether it was properly transferred under clause (1) of § 5032 because the Territorial Government had relinquished jurisdiction. To arrive at its conclusion, the majority says it is bound to accept the certification's statement to that effect because it is unreviewable.

Rather than simply accept the United States Attorney's certification on its face, I have reviewed the record and found that it provides undisputed evidence that the Attorney General of the Virgin Islands abandoned its prosecution of the juvenile and so informed the United States Attorney. I perceive no difference between a state's refusal to assume jurisdiction from the outset, see United

24

States v. Hill, 538 F.2d 1072, 1077 (4th Cir. 1976), and a state's agreement to relinquish jurisdiction after charges have been filed. Neither situation presents a conflict of the sovereigns' interests. When the state agrees to step aside, federalism concerns fade into the background. The certification therefore withstands review.

In addition, I fully agree with the majority's opinion that, after assuming jurisdiction, the district court properly invoked the mandatory transfer provision of section 5032 for treating defendant as an adult.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

25