

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-11-2007

# Henry v. BICE

Precedential or Non-Precedential: Precedential

Docket No. 05-3064

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Henry v. BICE" (2007). *2007 Decisions.* Paper 664.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/664

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-3064

———

DERICK ANTHONY HENRY,
Petitioner

v.

BUREAU OF IMMIGRATION AND
CUSTOMS ENFORCEMENT,
Respondent

———

On Petition for Review of Final Decision of the
Board of Immigration Appeals
(BIA No. A42-259-751)
Immigration Judge:  Walter Durling

———

Argued April 12, 2007
Before:  SMITH and COWEN, *Circuit Judges*,
and YOHN, *District Judge**

———

*The Honorable William H. Yohn Jr., Senior District Judge
for the Eastern District of Pennsylvania, sitting by designation.

(Filed: July 11, 2007)

RONALD P. SCHILLER, ESQUIRE
JACQUELINE R. DUNGEE, ESQUIRE (ARGUED)
DLA PIPER US LLP
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
        Attorneys for Petitioner

LINDA S. WERNERY, ESQUIRE
DOUGLAS E. GINSBURG, ESQUIRE
THANKFUL T. VANDERSTAR, ESQUIRE
ALISON M. IGOE, ESQUIRE
JOHN D. WILLIAMS, ESQUIRE
ADA E. BOSQUE, ESQUIRE (ARGUED)
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
        Attorneys for Respondent

————————————————

OPINION OF THE COURT

————————————————

2

YOHN, *District Judge*.

Derick A. Henry petitions for review of a final order by the Board of Immigration Appeals ("BIA") that ordered Henry removed. The BIA held that Henry's conviction of criminal possession of a weapon in the second degree under New York Penal Law Section 265.03 ("§ 265.03") constitutes a crime of violence under 18 U.S.C. § 16(b) and, therefore, an aggravated felony supporting removal. For the reasons stated herein, we will affirm the BIA and deny Henry's petition for review.

## I. Factual and Procedural History

Henry is a native of Jamaica and has been a lawful permanent resident since January 3, 1990. In 2000, Henry was arrested in New York and subsequently pleaded guilty to criminal possession of a weapon in the second degree under § 265.03. The specific charge in the Indictment to which Henry pleaded guilty stated: "The defendant, in the County of Westchester and State of New York, on or about April 8, 1999, did possess a loaded firearm, to wit, a .357 Magnum caliber Astro revolver, with intent to use the same unlawfully against another person. This is an Armed Felony Offense." Section 265.03 provides:

> A person is guilty of criminal possession of a weapon in the second degree when:
>
> (1) with intent to use the same unlawfully against another, such person:
>> (a) possesses a machine-gun; or

3

(b) possesses a loaded firearm; or

(c) possesses a disguised gun; or

(2) such person possesses five or more firearms; or

(3) such person possesses any loaded firearm. Such possession shall not, except as provided in subdivision one or seven of section 265.02 of this article, constitute a violation of this subdivision if such possession takes place in such person's home or place of business.

Criminal possession of a weapon in the second degree is a class C felony. § 265.03. Henry was sentenced to four years of imprisonment.

Based on this conviction, the Department of Homeland Security ("DHS") charged Henry with removabilty pursuant to 8 U.S.C. § 1227(a)(2)(C) for possession of a firearm and pursuant to § 1227(a)(2)(A)(iii) as an aggravated felon.[1] Section

---

[1]The provisions pursuant to which Henry was charged with removabilty state, in relevant part:

(a) Classes of deportable aliens. Any alien (including an alien crewman) in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens:

. . . .

(2) Criminal offenses.

240(A) of Immigration and Nationality Act, 8 U.S.C. § 1229b, allows for the cancellation of removal of certain permanent residents, but specifically precludes cancellation in the case of an alien who has been convicted of an aggravated felony. The term "aggravated felony" is defined by 8 U.S.C. § 1101(a), and includes a crime of violence, as defined by 18 U.S.C. § 16. *See* § 1101(a)(43)(F).

The Immigration Judge ("IJ") found Henry removable for having been convicted of a firearms offense but, after reviewing

> (A) General crimes.
>
> . . . .
>
> (iii) Aggravated felony. Any alien who is convicted of an aggravated felony at any time after admission is deportable.
>
> . . . .
>
> (C) Certain firearm offenses. Any alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of title 18, United States Code) in violation of any law is deportable.

8 U.S.C. § 1227(a)(2).

5

Henry's history and testimony, the IJ exercised his discretion to cancel the removal of Henry as permitted pursuant to § 1229b.

The IJ also concluded that Henry's conviction did not constitute an aggravated felony. The DHS appealed the IJ's decision to the BIA, arguing that the IJ had incorrectly held that Henry had not committed an aggravated felony. The BIA reversed, holding that Henry's conviction of criminal possession in the second degree constituted an aggravated felony because "a crime that involves possession of a loaded firearm with the intent to use the firearm unlawfully against another, 'by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense,'" and was thus a crime of violence. (J.A. 010 (quoting § 16(b).) As such, Henry was ineligible for cancellation of removal and the BIA ordered him removed. Henry timely filed a petition for review.

## II. Jurisdiction and Standard of Review

Under the REAL ID Act, we exercise jurisdiction to review "constitutional claims or questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D). Whether Henry's conviction constitutes an aggravated felony presents a question of law within our subject matter jurisdiction over which we exercise plenary review. *Garcia v. Att'y Gen. of the U.S.*, 462 F.3d 287, 291 (3d Cir. 2006). We do not defer to the BIA's determination of whether a crime constitutes an aggravated felony. *Singh v. Ashcroft*, 383 F.3d 144, 151 (3d Cir. 2004).

6

## III. Discussion

The issue before us is whether Henry's conviction for criminal possession of a firearm constitutes an aggravated felony. The term "aggravated felony" is defined by § 1101(a) as, *inter alia*, "a crime of violence (as defined in section 16 of title 18, United States Code, but not including a purely political offense) for which the term of imprisonment [is] at least one year." § 1101(a)(43)(F). In turn, under § 16:

> The term "crime of violence" means–
>
> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.[2]

§ 16. Because an alien convicted of an aggravated felony is ineligible for cancellation of removal pursuant to § 1229b, if Henry's crime constitutes an aggravated felony, then the BIA correctly ordered Henry removed. If not, the petition for review should be granted.

_____

[2]The BIA did not find and the government does not argue that Henry's conviction is encompassed by § 16(a); therefore, that section is not relevant here.

To determine if a person was convicted of a crime of violence within the meaning of § 16, the court employs the "categorical" approach. *Oyebanji v. Gonzales*, 418 F.3d 260, 262 (3d Cir. 2005) (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990)). This requires us "to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime." *Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004). However, the categorical approach does not bar us from determining which numbered subsection was violated where, as here, the disjunctive phrasing of the statute of conviction invites inquiry into the specifics of the conviction. *Tran v. Gonzales,* 414 F.3d 464, 469 n.4 (3d Cir. 2005); *Singh*, 383 F.3d at 162. Accordingly, we examine the conduct covered by § 265.03(1)(b)–possession of a loaded firearm with intent to use the same unlawfully against another.

In *Leocal*, the Supreme Court addressed the mental state necessary for a crime of violence under § 16(b) and held that § 16(b) "requir[es] a higher *mens rea* than [] merely accidental or negligent conduct." *Leocal*, 543 U.S. at 11. In *Tran*, decided after *Leocal*, we reaffirmed our precedent from *United States v. Parson*, 955 F.2d 858 (3d Cir. 1992), which held that neither does a reckless state of mind suffice to satisfy the requirements of § 16(b). *Tran*, 414 F.3d at 470-72. Accordingly*,* "§ 16(b) crimes are those raising a substantial risk that the actor will intentionally use force in the furtherance of the offense." *Id.* at 471 (emphasis omitted). Stated another way, "a crime of violence under § 16(b) must involve a substantial risk that the actor will intentionally use physical force in committing his

8

crime." *Id.* at 472.  Thus, applying the categorical approach and our § 16(b) jurisprudence, our inquiry is whether the possession of a loaded firearm with intent to use the same unlawfully against another involves a substantial risk that the actor will intentionally use physical force in committing his crime.

This court has already addressed this same question, albeit under different statutes.  In the case *Impounded*, 117 F.3d 730 (3d Cir. 1997), a panel of this court considered whether a juvenile had committed an act within a class of crimes defined by 18 U.S.C. § 5032 so as to render him subject to mandatory transfer from juvenile status to prosecution as an adult in federal district court.  *Impounded*, 117 F.3d at 731.  The language of § 5032 that defines acts mandating transfer is in all material respects identical to § 16(b):  "a juvenile who is alleged to have committed an act . . . which if committed by an adult would be a felony offense . . . that, by its very nature, involves a substantial risk that physical force against the person of another may be used in committing the offense."  § 5032.  Although the juvenile was charged with other crimes that clearly met the definition of an act mandating transfer, the panel specifically examined the possession crime with which the juvenile was charged.  *Impounded*, 117 F.3d at 737 n.10.  The court employed the categorical approach, looking at the statute of conviction, Section 2251(a)(2) of Title Fourteen of the Virgin Islands Code ("§ 2251(a)(2)"), to determine whether it met the definition in § 5032.  *Id.* at 738 & n.11.  The language of the possession crime at issue in *Impounded* tracks the language of the New York criminal statute under which Henry was

9

convicted, punishing a person who "with intent to use the same unlawfully against another, has, possesses, bears, transports, carries or has under his proximate control, a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly weapon." § 2251(a)(2). Examining two statutes that for all relevant purposes are identical to the statute of conviction and enumerating statute applicable to Henry, we concluded in *Impounded*: "Certainly if someone intends to use a dangerous weapon then there is 'substantial risk that physical force . . . may be used.' Therefore, § 2251(a)(2) satisfies . . . the § 5032 mandatory transfer provisions." *Impounded*, 117 F.3d at 738.[3,][4]

---

[3]Stated another way, we held:

> Because the possession crime includes as an element of the offense the intent to use a dangerous weapon, and the commission of the crime will therefore present a substantial risk that physical force will be used, we hold that the possession crime satisfies the requirements of the § 5032 mandatory transfer provisions.

*Impounded*, 117 F.3d at 731.

[4]In the margin, we also opined that the elements of § 2251(a)(2) satisfy the requirements of § 16(b). *Impounded*, 117 F.3d at 738 n.12. This was dictum in *Impounded* and it is here we write to affirm that proposition, applying the reasoning in *Impounded* to the statutes at issue.

10

In interpreting § 2251(a)(2), we drew upon cases involving determinations of whether a felon-in-possession crime constituted a "crime of violence," as defined by the Sentencing Guidelines. *Impounded*, 117 F.3d at 738 n.13. We explained that prior to the 1991 amendment to the Guidelines,[5] courts relied on the following inferential analysis: "mere possession may imply intent to use . . . . The intent to use in turn creates the substantial risk of the use of physical force." *Id.* After amendment, the Sentencing Commission made the first inferential step (possession implies intent to use) impermissible. *Id.* However, we reasoned in *Impounded* that because § 2251(a)(2), the Virgin Islands statute, required proof of intent, intent did not have to be inferred as was no longer permissible; accordingly, the reasoning of the second inferential step (intent to use creates the substantial risk of the use of force) remained unchanged and was relied on. *See id.*

Henry asserts that *Leocal* undermines the reasoning of *Impounded* because *Leocal* prohibits reliance on the definition of a "crime of violence" contained in the Sentencing Guidelines, which he contends was the basis for the court's holding in *Impounded*. The *Leocal* Court noted specifically that the definition of a "crime of violence" under the Sentencing Guidelines is not the same as the definition of a "crime of

---

[5]The application notes were amended, effective November 1, 1991, to state: "The term 'crime of violence' does not include the offense of unlawful possession of a firearm by a felon." U.S. Sentencing Guidelines Manual § 4.B1.2 cmt. n.2 (1992).

11

violence" under § 16(b). 543 U.S. at 10 n.7; *see also United States v. Hull*, 456 F.3d 133, 139 (3d Cir. 2006) ("The *Leocal* Court rejected, as dissimilar and insufficient, the definition and interpretation of U.S.S.G. § 4B1.2(a)(2)'s definition of 'crime of violence,' which required only 'conduct which presents a serious potential risk of physical injury to another.'"). However, before the Sentencing Guidelines were amended in 1989, the term "crime of violence" was defined by § 16.[6] Therefore, cases interpreting § 16 in the sentencing context remain relevant. *See*

---

[6]Prior to amendment, § 4B1.2 stated: "The term 'crime of violence' as used in this section is defined under 18 U.S.C. § 16." U.S. Sentencing Guidelines Manual § 4.B1.2(1) (1989). Effective November 1, 1989, the Guidelines were amended to define a "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that–
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S. Sentencing Guidelines Manual § 4.B1.2 app. C, amend. 268 (2006).

12

*Tran*, 414 F.3d at 470 n.5 ("The fact that *Parson* interpreted § 16 in the Sentencing Guidelines context, while we now interpret it in the immigration context, does not prevent our interpretation of § 16 in that case from binding us now."). Our analysis that the intent to use creates a substantial risk of the use of physical force thus remains intact and we are bound by it. *See* 3d Cir. Internal Operating P. 9.1 ("[T]he holding of a panel in a precedential opinion is binding on subsequent panels."). Regardless, the proposition is sound: certainly if someone intends to use physical force there is a substantial risk that physical force may be used.

Henry argues that the crime at issue cannot be a crime of violence because the final element of § 16(b)–the requirement that the substantial risk of the use of force arise in the course of committing the offense–is not met. Henry cites *Hull* for authority, contending at oral argument that *Hull* "repeatedly emphasized that the focus is on whether or not the risk of physical injury arises during the course of committing the crime," and that "when the individual possesses the weapon with the intent to use, at that point, the crime is complete, any additional [] effect of that, which we don't look at in this analysis, is a different crime." In other words, Henry asserts that once the offense is complete–at the moment Henry possessed the weapon and had a thought of intending to use that weapon against another–he could no longer act during the commission of the crime and any further actions constitute another crime entirely. We disagree with this analysis.

13

In *Hull*, we found that the mere possession of a pipe bomb does not constitute a crime of violence under § 16(b) because "[t]here is no risk that physical force might be used against another to commit the offense of *possession*." 456 F.3d at 139 (emphasis in original). Thus, we did not take into account the ultimate purpose of the pipe bomb, as it was not part of the offense. *Id.* Similarly, in *United States v. Bowers*, 432 F.3d 518 (3d Cir. 2005), we concluded, under the largely identical provisions of the Bail Reform Act,[7] that "the mere fact

---

[7]The Bail Reform Act of 1984 requires a court to hold a detention hearing upon motion by the government if the defendant is charged with a crime of violence. 18 U.S.C. § 3142(f)(1)(A). The Act then lists factors a court must consider in deciding whether to release a defendant pending trial, including whether the offense is a crime of violence. § 3142(g)(1). For purposes of these provisions, the term "crime of violence" means:

> (A) an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;

> (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or

14

that the particular individual who possesses a firearm is a felon does not permit an inference that he will use the weapon violently." *Bowers*, 432 F.3d at 521-22. This is because possession alone does not permit the inference that there is a substantial risk of the use of force. *See id.* at 521 (stating that "unwarranted 'factual assumptions'" are required to establish "'a direct relationship between [possession of a firearm] and a risk of violence'" (quoting *United States v. Singleton*, 182 F.3d 7, 14 (D.C. Cir. 1999))).

However, the statute in *Impounded* and the New York statute under which Henry was convicted both require proof not only of possession but also of intent to use a weapon unlawfully against another, whereas in *Hull* and *Bowers* we considered only the crime of possession, without the concomitant element of intent to use the weapon unlawfully. Intent means "either that (1) it was [the defendant's] conscious desire or purpose to act in a certain way or to cause a certain result, or that (2) [the defendant] knew that [he or she] was acting in that way or would be practically certain to cause that result." 3d Cir. Model Criminal Jury Instr. § 5.03 (2006). Under *Impounded*, proof of the intent element creates the substantial risk that physical force will be used during the commission of the offense. Under *Hull*, proof of the intent element satisfies the requirement that § 16(b) "crimes are those raising a substantial risk that the actor will

_____

(C) any felony under chapter 109A, 110, or 117.

§ 3156(a)(4).

15

intentionally use force in the furtherance of the offense." 456 F.3d at 140 (internal quotation and emphasis omitted).

Henry's reading of *Hull* is also too narrow because it would prevent burglary–the paradigmatic § 16(b) crime as discussed by the Supreme Court in *Leocal*–from being considered a crime of violence under § 16(b). *See Leocal*, 543 U.S. at 10 (describing burglary as "[t]he classic example"). Generic burglary requires "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor*, 495 U.S. at 598. As such, the requisite elements of a burglary are complete once the burglar enters and possesses the necessary mental intent. However, the substantial risk that the burglar will use force comes from the possibility that the burglar will encounter another during the course of the burglary; it is irrelevant that the technical elements have already been accomplished. *See Leocal*, 543 U.S. at 10 (concluding that "[a] burglary would be covered under § 16(b) . . . because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime); *see also James v. United States*, 127 S. Ct. 1586, 1594-95 (2007) (stating the risk of burglary "arises not from the completion of the burglary, but from the possibility that an innocent person might appear while the crime is in progress"); *Parson*, 955 F.2d at 866 (noting that "a burglar of a dwelling risks having to use force if the occupants are home and hear the burglar").

Accordingly, we conclude that possession of a weapon with intent to use the same unlawfully against another, as

16

described in § 265.03, is a crime of violence within the meaning of § 16(b).  Thus, we will affirm the BIA and deny Henry's petition for review.